FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2016 APR 22 PM 1:24

MIDDLE D...
ORLANDO, FL

FLORENCE LOGAN-WORSHAM,

   Plaintiff,

v.

CASE NO.:
6:16-cv-686-ORL-28-DAB

DRIVETIME AUTOMOTIVE GROUP, INC.,

   Defendant.

_____/

## COMPLAINT

1. Plaintiff alleges DRIVETIME AUTOMOTIVE GROUP, INC. "robo-called" her more than 1,000 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## INTRODUCTION

2. "Robocalls" are the #1 consumer complaint in America today.

3. The FTC reported over 3.2 million complaints about robocalls in 2014, of which almost half (1,678,433) occurred after the consumer had already requested that the company stop call. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014, at 5 (Nov. 2014). Since this report the number of complaints have increased. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Senate Hearing at 5.

1

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

5. The TCPA was enacted to prevent companies like DRIVETIME AUTOMOTIVE GROUP, INC from invading American citizens' privacy and prevent illegal robocalls.

6. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." Mims v. Arrow Fin. Servs., LLC, --US--, 132 S. Ct. 740, 745, 181 L.Ed.2d 881 (2012).

7. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." Osario v. State Farm Bank, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

## JURISDICTION AND VENUE

8. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

9. The alleged violations described in the Complaint occurred while Plaintiff was in Florida.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person.

11. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8).

12. Plaintiff is an "alleged debtor."

13. Plaintiff is the "called party." See Breslow v. Wells Fargo Bank, N.A., 755 F. 3d 1265 (11th Cir. 2014) and Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

14. Defendant is a corporate entity registered in Arizona, responsible for attempting to collect a consumer debt from Plaintiff and is transacting business in the State of Florida.

15. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

16. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (***) ***-4588.

17. Plaintiff was the "called party" during each phone call subject to this lawsuit.

18. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

19. Defendant illegally attempted to collect a debt for approximately $80.00 from the Plaintiff that Defendant knew the Plaintiff did not owe

20. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

21. Defendant made at least one call to (***) ***-4588 using an "automatic telephone dialing system" (ATDS).

22. Defendant made at least one hundred (100) calls to (***) ***-4588 using an ATDS.

23. Defendant made at least five hundred (500) calls to (***) ***-4588 using an ATDS.

24. Defendant made at least one thousand (1,000) calls to (***) ***-4588 using an ATDS.

25. Each call the Defendant made to (***) ***-4588 in the last four years was made using an ATDS.

26. Each call the Defendant made to the Plaintiff was made using an ATDS which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

27. Furthermore, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

28. Defendant has stipulated in another lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS.

29. Plaintiff repeatedly requested the Defendant to stop calling her cell phone however the Defendant continued to make calls

30. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express permission" of the Plaintiff.

4

31. Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

32. Defendant has recorded at least one conversation with the Plaintiff

33. Defendant has recorded numerous conversations with the Plaintiff.

34. Defendant has made approximately one thousand (1,000) calls to Plaintiff's aforementioned cellular telephone number from 2013 until today, which will be established exactly once Defendant turns over their dialer records.

35. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

36. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

37. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have had.

38. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

39. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

40. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint. The Defendant has been sued civilly in Federal Court 26 times in the last three (3) years (Attached hereto as Exhibit "A").

41. Since January 2014, Defendant has had 213 complaints filed against it with the Consumer Financial Protection Bureau (Attached hereto as Exhibit "B").

42. In the last three (3) years, the Defendant has had 1,000 complaints reported to the Better Business Bureau (BBB)1, of which 203 of those complaints are classified as being related to "Billing/Collection Issues" (attached hereto as exhibit "C").

43. Plaintiff expressly revoked consent to Defendant's placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

44. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

45. Defendant violated the TCPA with respect to the Plaintiff.

46. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
(Violation of the TCPA)

47. Plaintiff incorporates Paragraphs one (1) through forty-six (46).

---

[1] Retrieved from http://www.bbb.org/phoenix/business-reviews/auto-dealers-used-cars/drivetime-in-tempe-az-3010477/ on 3/11/2016.

48. Defendant caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

49. Defendant willfully and knowingly caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

50. Plaintiff incorporates Paragraphs one (1) through forty-six (46).

51. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

52. Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to harass the debtor.

53. Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse the debtor.

54. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/Billy Howard*

William Peerce Howard, Esquire
Florida Bar No. 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esquire
Florida Bar No. 98228
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm, PLLC
210 A South MacDill Avenue
Tampa, FL 33609
Tele: (813) 500-1500
Fax: (813) 435-2369
Attorney for Plaintiff